**LaMonica Herbst & Maniscalco, LLP**
3305 Jerusalem Avenue, Suite 201
(516) 826-6500
Gary F. Herbst, Esq.
Adam P. Wofse, Esq.
Michael T. Rozea, Esq.

*Proposed Counsel to Durr Mechanical Construction, Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                                        :
In re:                                                  :   Chapter 11
                                                        :
DURR MECHANICAL CONSTRUCTION, INC.      :   Case No. 18-13968
                                                        :
                                                        :
              Debtor.                                   :
                                                        :
---------------------------------------------------------------x

**DECLARATION OF KENNETH DURR**
**PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2**

I, **KENNETH A. DURR**, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following is true and correct:

1.      I am the President and Treasurer of Durr Mechanical Construction, Inc.  ("DMC" or the "Debtor"), debtor and debtor in possession herein. In this capacity, I am familiar with the day-to-day operations and financial affairs of DMC.

2.      I submit this declaration (the "Declaration") pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules") in support of DMC's petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") filed on the date hereof (the "Petition Date"). Except as otherwise indicated, all facts set forth in this Declaration are based upon personal knowledge, my review of relevant documents, or my opinion based upon experience, knowledge, and information concerning DMC's operations. If called upon to testify, I would testify competently to the facts set forth in this Declaration.  I

am authorized to submit this Declaration on behalf of the Debtor.

## INFORMATION REQUIRED BY LOCAL RULE 1007-2

3.      Local Rule 1007-2 requires certain information related to the Debtor, which is set forth below and in the schedules annexed hereto. Unless otherwise indicated, the financial information contained herein is unaudited.

4.      Local Rule 1007-2(a)(1): The nature of the Debtor's business and the circumstances leading to the Debtor's filing this Chapter 11 case are as follows:

### DMC's Business Operations

DMC is a New York corporation founded in 1985 as a small family-owned mechanical construction business by my father, Robert Durr, Sr.  Since my father's retirement in 2012, DMC has been run by my brother, Robert Durr, Jr., and myself. DMC's ownership structure consists of 1000 shares of stock, broken down as follows: (a) 900 shares of non-voting stock which is distributed among: (i) Robert Durr Jr. who owns 423 shares; (ii) Kenneth A. Durr who owns 423 shares and (iii) Frank Heidinger who owns 54  shares; and (b) 100 shares of voting stock which is distributed among: (i) Robert Durr Jr. who owns 45 shares; (ii) Kenneth A. Durr who owns 45 shares and (iii) Robert Durr who owns 10 shares.

DMC is and was a leader and innovator in the mechanical industry. Its work involves installation, rigging, setting, assembly, alignment and grouting of assorted process and power equipment including electric or steam driven compressors, ACC's, HRSG's turbines, pumps, heat exchangers, boilers, tanks, heaters and packaged HVAC systems. DMC's work scope also includes the installation and testing of instruments, controls and apparatus associated with power and process systems.  It distinguishes itself with an in-house quality assurance program and has capabilities that have been demonstrated and approved by both the American Society of

Mechanical Engineers (ASME) and the National Board of Boiler and Pressure Vessel Inspectors. DMC has been issued "U", "R", "NB" and "S" stamps indicating DMC's authorization to perform repair, manufacture and assemble boiler and pressure vessels.

Throughout 2018, DMC has worked on over fifty small to large size projects which resulted in revenues in excess of twenty million dollars. During the 2016 year, DMC's total sales exceeded $54,600,000 and during 2017, DMC's gross sales exceeded $197,860,000. In its thirty-two (32) year history in the mechanical construction business, DMC has generated gross sales which exceed $1,392,000,000 which has resulted in gross profits of over $130,787,000.

DMC is presently providing services on three remaining on-going construction projects in the New York metropolitan area and Connecticut.[1] In addition to these on-going projects, DMC presently has total accounts receivables in the approximate aggregate sum of $3,067,000 as of December 5, 2018.[2] DMC has approximately twenty-six (26) employees, which are comprised of construction workers in the field that are members of various unions, field management level employees, and home office executive and support staff.

DMC operates its business from its Manhattan headquarters, which it has leased since January 1, 1986. The Debtor also (i) leases shop and yard space in Westbury, New York and (ii) operates an office and shop facility in Tannersville, Pennsylvania, where it stores construction equipment, certain tools and its fleet of vehicles.

DMC has a line of credit with HSBC Bank USA, National Association ("HSBC"), which it has drawn down in the amount of $5,000,000.00, as of the Petition Date. The credit line is secured by a blanket lien in the Debtor's assets. DMC has a second line of credit with Valley

---

[1] DMC estimates that the net amount to be earned from these projects (after accounting for all costs) is approximately $25,000.00.
[2] These receivables are in addition to the Affirmative Claims in excess of $122 million set forth and discussed more fully below.

National Bank ("VNB", together with HSBC, each a "Lender" and collectively the "Lenders"), which it has drawn down in the amount of $5,000,000.00 as of the Petition Date. The credit line is secured by a blanket lien in the Debtor's assets.  Pursuant to an agreement among the Lenders and the Debtor, the Lenders are equally in a first secured position against the Debtor's assets.

**Events Leading to the Chapter 11 Filing**

DMC, being a leader in the mechanical industry, serviced many large-scale projects. DMC has been experiencing severe cash flow issues primarily as a result of the failure of the two owners and one equipment manufacturer of three projects to timely pay—and their abject bad faith refusal to pay—amounts due and owing to the Debtor in connection with those projects. Specifically, the equipment manufacturer and owners who have failed to pay are (a) Enexio US LLC ("Enexio"), (b) PSEG Fossil, LLC ("PSEG"), and (c) the New York City Department of Environmental Protection ("NYC-DEP") (collectively, Enexio, PSEG and NYC-DEP, the "Obligors"). The aggregate sum due to the Debtor from these (mostly) completed projects (and affirmative claims for damages as further set forth below) exceeds $122 million. As of the Petition Date, the Enexio and PSEG projects are 100% complete and the NYC-DEP project is 98% complete.

DMC's cash flow problems negatively affected its operations because certain subcontractors, vendors and/or creditors have (a) filed liens against projects, (b) filed claims against payment bonds, and/or (c) commenced litigation against DMC for nonpayment, all further exacerbating DMC's distressed financial situation.

**The Debtor's Affirmative Claims**

At this juncture, DMC has sufficient assets by virtue of its receivables and affirmative claims ("Affirmative Claims") against the Obligors that are due and owing to DMC to address its

financial obligations. As indicated above, the aggregate total of the Affirmative Claims exceeds $122 million. DMC is presently prosecuting litigation against Enexio and PSEG, respectively, to collect the funds justly owed the Debtor. With respect to the claims against NYC-DEP, claims have been filed with the NYC Comptroller's office. All of the litigations against the Obligors will continue to be prosecuted in earnest in the Chapter 11 case.

However, as mentioned above, given the extraordinary failure and refusal of the Obligors to pay their obligations to DMC, DMC was forced into this distressed situation, and is constrained to reorganize via an orderly liquidation in order to be placed in a position to address its financial obligations and affairs. Thus, DMC filed the instant Chapter 11 case.

## Chapter 11

Without a breathing spell provided by the Chapter 11 filing, the aforementioned creditor actions would pose a serious threat to the Debtor's immediate viability (including its ability to prosecute the Affirmative Claims) to the detriment of all of its constituencies, including its employees.

Accordingly, absent the protections of chapter 11, the Debtor is at risk of having its assets depleted. The Debtor requires the benefit of the automatic stay and powers afforded to a debtor in possession so as to adequately operate its business in a wind down fashion to close out jobs, and prosecute its valuable Affirmative Claims. This chapter 11 filing seeks to protect the value of the Debtor's business for all of its constituencies.

After careful consideration, and after exhausting all available remedies outside of a chapter 11 filing, DMC has determined that it requires the protection offered by chapter 11. DMC intends to use the chapter 11 process to stabilize its limited operations and develop a

reorganization through an orderly liquidation plan that will preserve value for all of its creditors and interest holders.

As a result, DMC filed the instant chapter 11 bankruptcy case. DMC intends to continue with limited operations and file a plan of reorganization (via an orderly liquidation) through which it will repay its obligations to the maximum extent possible in accordance with the Bankruptcy Code. DMC believes that based upon the current valuation of its assets, there will be funds sufficient to make a distribution to unsecured creditors.

5.    Local Rule 1007-2(a)(2): Not applicable because the Debtor's case was not originally commenced under Chapter 7 or 13.

6.    Local Rule 1007-2(a)(3): Not applicable because no committee was organized prior to the Petition Date.

7.    Local Rule 1007-2(a)(4): Schedule 1 hereto lists the following information with respect to each of the holders of the Debtor's twenty (20) largest unsecured claims, excluding claims of insiders: the creditor's name, address (including the number, street, apartment or suite number, and zip code, if not included in the post office address), telephone number if known, the name(s) of persons(s) familiar with the Debtor's accounts if known, the amount of the claim, and an indication of whether the claim is contingent, unliquidated, disputed or partially secured.

8.    Local Rule 1007-2(a)(5): Schedule 2 hereto provides the following information with respect to each of the holders of the Debtor's five (5) largest secured claims: the creditor's name and address (including the number, street, apartment or suite number, and zip code, if not included in the post office address), the amount of the claim, a brief description of the claim, an estimate of the value of the collateral securing the claim, and whether the claim or lien is disputed.

9.    Local Rule 1007-2(a)(6): Schedule 3 hereto is a summary of the Debtor's assets

and liabilities.

10.     Local Rule 1007-2(a)(7): Not applicable because none of the securities of the Debtor are publicly held.

11.      Local Rule 1007-2(a)(8): Not applicable because none of the Debtor's property is in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents or secured creditor, or agent for any such entity, including the name, address, telephone number of each such entity and the court in which any proceeding related thereto is pending.

12.     Local Rule 1007-2(a)(9):  Schedule 4 hereto provides a list of the premises owned, leased or held under other arrangement from which the Debtor operates its business.

13.     Local Rule 1007-2(a)(10): Schedule 5 hereto provides the location of the Debtor's substantial assets, the location of its books and records, and the nature, location, and value of any assets held by the Debtor outside the territorial limits of the United States.

14.     Local Rule 1007-2(a)(11): Schedule 6 hereto provides the nature and present status of each action or proceeding, pending or threatened, against the Debtor or its property where a judgment against the Debtor or a seizure of its property could be imminent.

15.     Local Rule 1007-2(a)(12): Schedule 7 hereto provides a list of the names of the individuals who comprise the Debtor's existing senior management, their tenure with the Debtor, and a brief summary of their relevant responsibilities and experience.

16.     Local Rule 1007-2(b)(1): Schedule 8 hereto provides the estimated amount of weekly payroll to employees (exclusive of officers, directors, stockholders and partners) for the thirty (30) day period following the Petition Date.

17.     Local Rule 1007-2(b)(2):  Schedule 9 hereto provides the estimated amount of weekly payroll to the Debtor's officers, directors and/or stockholders for the thirty (30) day

period following the Petition Date.

18.    Local Rule 1007-2(b)(3):  Schedule 10 hereto provides a schedule of estimated cash receipts and disbursements, net cash gain or loss, obligations and receivables expected to accrue but remain unpaid, other than professional fees, and any other information relevant to an understanding of the foregoing for the thirty (30) day period following the Petition Date.

### SUMMARY OF FIRST DAY MOTIONS[3]

19.    To enable the Debtor to operate effectively and minimize adverse effects from its chapter 11 filing, the Debtor has requested or will be requesting certain relief in "first day" motions (the "First Day Motions") filed with the Court and described below. In connection with preparing for this case, I have reviewed each of the First Day Motions referenced below. The First Day Motions were prepared with my input and assistance. I believe that the information contained in the First Day Motions is accurate and correct. As set forth more fully below, I believe that the entry of orders granting the relief requested in these motions is critical to the Debtor's ability to preserve the value of its estate and succeed in maximizing value for the Debtor's creditors.

   A.  *Debtor's Motion for Entry of an Order Authorizing the Debtor to Use Cash Collateral and Provide Adequate Protection to Secured Creditor*

20.    The Debtor will file a motion seeking to use the cash collateral of HSBC and VNB. The Debtor's use of cash collateral is necessary to pay its usual and ordinary operating expenses while the Debtor tends to its business operations. Absent the use of cash collateral to pay payroll, purchase materials and operate its business in general, the value of the Debtor's assets will be eradicated.

21.    The Debtor will require the immediate use of cash collateral in order to avoid

---

[3] Terms not otherwise defined herein shall have the meanings ascribed to them in the relevant First Day Motion.

immediate and irreparable harm to its business. Absent the ability to pay usual and normal operating expenses, payroll and purchase supplies, the value of the Debtor's business will be irreparably harmed as the Debtor will be forced to default on its remaining open construction projects.

B. *Debtor's Motion for Entry of an Order Authorizing to the Debtor to (i) Continue its Cash Management System, (ii) Maintain existing bank accounts and (iii) Receive a waiver of certain operating guidelines relating to bank accounts*

22.     The Debtor will file a motion seeking the entry of an order authorizing the Debtor to continue to use its cash management system, maintain and continue to use existing bank accounts and a waiver of certain operating guidelines relating to bank accounts so as to not disrupt the day-to-day operations of the Debtor, including, but not limited to, payment of employee wages, union benefits, medical and dental programs, taxes and other payroll-related obligations.

23.     If the motion were not granted, I believe that not only would the employees suffer enormous personal hardship because the Debtor would be forced to utilize its limited resources to try to avoid many of the possible disruptions to its operations, multiple employees and on-going projects during the critical early days of its Chapter 11 case. Therefore, I submit that the Debtor's business would be immediately and irreparably harmed. Without obtaining an order granting the relief requested in the motion, the Debtor will be unable to maintain its operations and would therefore be unable to maximize value of its assets for its creditors.

C. *Debtor's Motion for Entry of Interim and Final Orders (i) Authorizing Post-Petition Secured Financing from Zurich American Insurance Company Pursuant to 11 U.S.C. §§ 105(a), 361, 362 and 364 of the Bankruptcy Code, (ii) Granting Priming and Other Liens and Superpriority Administrative Expense Claims, and (iii) Scheduling Final Hearing Pursuant to Bankruptcy Rule 4001(c)*

24.     The Debtor will file a motion seeking the entry of an order authorizing the Debtor

to incur post-petition debt on a secured basis under section 364(c) of the Bankruptcy Code and to enter into a certain post-petition financing agreement with Zurich.

25.     Without the financing proposed by the motion, the Debtor does not have the funds necessary to continue its operations. The Debtor's ability to continue its operations, make payroll, pay the costs of administration of its estate and satisfy other working capital and operational needs, depends upon obtaining immediate access to the Loan Facility (as defined in the motion). Failure to obtain the relief requested in the Motion will immediately and irreparably harm the Debtor, its estate, creditors and equity holders.

> D. *Motion of the Debtor for Entry of an Order (i) Authorizing the Debtor to pay (a) Certain prepetition employee obligations and (b) prepetition withholding obligations, (ii) Authorizing the Debtor to Continue Performing Under the Collective Bargaining Agreements, (iii) Authorizing the Debtor to Continue to provide Employee Benefit Programs to Non-Union Employees, (iv) Directing Banks to Honor Related Prepetition Transfers and (v) Granting Related Relief*

26.     The Debtor will file a motion seeking authority, in its discretion, to pay and/or honor certain prepetition wage claims of employees, all prepetition withholding obligations and payroll taxes related to such wages, union benefits and certain prepetition employee benefit programs, and to confirm performing under its union contracts. I believe that this relief is critical to the continuation of the Debtor's business in the context of this bankruptcy filing.

27.     The Debtor's employees are a vital and important asset. The Debtor's success in pursuing the litigations is dependent upon the employees who have specific knowledge of the projects performed, and therefore the retention of the employees is essential to the Debtor's operations.

28.     If the motion were not granted, I believe that not only would the employees suffer enormous personal hardship, but the Debtor's business would be immediately and irreparably harmed. It is likely that many, if not all of the employees, would quit.  Without its employees,

the Debtor will be unable to maintain its operations and would therefore be unable to maximize the value of its assets for its creditors.

29.     In addition, the filing of a chapter 11 petition is a stressful and uncertain time for a debtor corporation and its employees. I believe that honoring the pre-petition employee obligations described in the motion will minimize the hardship that the employees would otherwise endure if payroll and benefit programs were interrupted and will prevent a rapid loss of employees that otherwise may occur if the employees lost their reasonable expectation of compensation for their services. I believe that the continued payment of prepetition employee obligations is both critical and justified based upon the importance of the employees to the Debtor's operations.

   E.  *Motion of the Debtor for Entry of an order pursuant to 11 U.S.C. § 366(I) Deeming Utilities Adequately Assured of Future Performance, (ii) Establishing Procedures for Determining Adequate Assurance of Payment, and (iii) Prohibiting Utilities from Altering, Refusing or Discontinuing Service*

30.     In connection with the operation of its business at the Debtor's multiple premises, the Debtor regularly incurs expenses for gas, electricity, telephone and internet services provided by various Utility Providers. To provide adequate assurance of payment for future services, the Debtor proposes to grant the Utility Providers a security deposit based upon two weeks' worth of the average monthly billing, to the be paid to the Utility Providers by the Debtor.

31.     I believe that the Proposed Adequate Assurance constitutes sufficient adequate assurance of payment under the circumstances and should be approved. However, if the Utility Providers disagree with the Debtor's analysis, the Debtor has proposed the Adequate Assurance Procedures for the Utility Providers to request additional adequate assurance. I believe that the Adequate Assurance Procedures will enable the parties to negotiate and, if necessary, seek Court intervention without jeopardizing the Debtor's chapter 11 case, while still protecting the rights of

the Utility Providers.

32.    Should any Utility Provider refuse or discontinue service, even for a brief period of time, I believe that the Debtor's ability to preserve and maximize the value of its estate could be severely and irreparably harmed. For these reasons, I believe that it is critical that the utility services continue uninterrupted and that the Utility Providers be prohibited from altering, refusing or discontinuing services on account of prepetition amounts outstanding or on account of any perceived inadequacy of the Debtor's proposed adequate assurance.

### F.  Debtor's Application for an order Extending Time for the Debtor to File Schedules of Assets and Liabilities and Statements of Financial Affairs

33.    Debtor will also be seeking an extension of its time to file its schedules of assets and liabilities and Statement of Financial Affairs. The Debtor was faced with an immediate and urgent need to file this Chapter 11 case. As such, an extraordinarily large burden was placed upon the Debtor's financial advisors and management in the immediate weeks preceding the Petition Date. In addition, it is likely that during the next several weeks, the Debtor will be inundated with attendant responsibilities and requests from its surety, Lenders and other parties in interest, as is customary in many bankruptcy cases.

34.    Accordingly, the Debtor requests that it be afforded an additional thirty (30) day extension of time to file its schedules without prejudice to a further request for additional time should the same be necessary.

### G.  Debtor's Motion to Lift Stay to Allow Affirmative Claims to Proceed

35.    Debtor is also filing a motion to modify the automatic stay so as to permit all parties in the Debtor's pending pre-petition Affirmative Actions to resume and pursue all claims,

defenses and counterclaims asserted therein.[4] This relief is critical and urgent because the sums sought be recovered from these actions represents the Debtor's largest assets, which asserts combined claims in the aggregate amount in excess of $100,000.000.

36.     The prosecution of the Affirmative Actions is essential to the Debtor's bankruptcy cases and given the impending upcoming December hearings scheduled in the Arbitration, it is critical to the Debtor's ability to preserve the value of its estate and succeed in maximizing value for the Debtor's creditors, that the motion is granted.

37.     In furtherance of the reorganization efforts, DMC respectfully requests that the orders granting the relief requested in the First Day Motions be entered.

Executed this 6th day of December, 2018.

DURR MECHANICAL CONSTRUCTION, INC.


By: s/ Kenneth Durr
    Kenneth A. Durr
    President

---

[4] In connection with this First Day Motion, the Debtor also seeks the employment of two separate special counsel to proceed with prosecuting the claims made in the Arbitration and PSEG Litigation in the most expeditious manner possible.

## Schedule 1

**20 Largest Unsecured Claims (Excluding Insiders)**

**SEE ATTACHED**

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor name | **Durr Mechanical Construction, Inc.** |
| United States Bankruptcy Court for the: | **SOUTHERN DISTRICT OF NEW YORK** |
| Case number (if known): | |

☐ Check if this is an

amended filing

## Official Form 204

## Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders
**12/15**

**A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31).  Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.**

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | **Total claim, if partially secured** | **Deduction for value of collateral or setoff** | **Unsecured claim** |
| **Amquip Crane Rental LLC** Lockbox #774389 4389 Solutions Center Chicago, IL 60677-4003 | | | **Disputed** | | | **$2,290,147.61** |
| **Analytic Stress Relieving, Inc** Dept. #1027 P.O. Box 740209 Atlanta, GA 30374-0209 | | | **Disputed** | | | **$296,294.75** |
| **Apache Industrial United, Inc** Lockbox 677381 Dallas, TX 75267-7381 | | | **Disputed** | | | **$516,680.50** |
| **Atlantic Contracting** P.O. Box 64191 Baltimore, MD 21264-4191 | | | **Disputed** | | | **$403,569.38** |
| **AWISCO New York Corp.** 55-15 43rd Street Maspeth, NY 11378 | | | | | | **$146,791.77** |
| **Boilermakers Fringe Benefits** 745 Minnesota Avenue Kansas City, KS 66101 | **Boilermakers Fringe Benefits** | | | | | **$338,338.59** |
| **Brand Energy Services** P.O. Box 91473 Chicago, IL 60693 | | | **Disputed** | | | **$351,118.82** |

| Debtor | **Durr Mechanical Construction, Inc.** | | | Case number *(if known)* | | |
| | Name | | | | | |

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| **Creamer-Sanzari Joint Venture 101 E Broadway Hackensack, NJ 07601** | | | | | | $523,298.91 |
| **Crestmark Equipment Finance 40950 Woodward Avenue Suite 201 Bloomfield Hills, MI 48304** | | | | | | $618,994.00 |
| **Lifting Gear Hire Corp. 9925 S. Industrial Drive Bridgeview, IL 60455** | | | **Disputed** | | | $349,304.57 |
| **Mammoet USA South, Inc. 20525 FM 521 Rosharon, TX 77583** | | | **Disputed** | | | $467,362.50 |
| **National Ind. Supply, Inc. 113 Lincoln Blvd. Middlesex, NJ 08846** | | | | | | $299,223.75 |
| **O'Leary Construction, Inc. 1830 Gilford Avenue New Hyde Park, NY 11040** | | | **Disputed** | | | $1,024,224.80 |
| **P & M Brick, LLC. 2170 Route 144 P.O. Box 890 Coeymans, NY 12045** | | | | | | $290,928.62 |
| **Safeway Services, LLC N19 W24200 Riverwood Drive Waukesha, WI 53188** | | | | | | $262,527.00 |
| **Steamfitters' Fringe Benefits PO Box 1668 New York, NY 10016-1668** | **Steamfitters' Fringe Benefits** | | | | | $165,548.56 |
| **Supor Crane & Rigging, LLC 433 Bergen Ave Kearny, NJ 07032** | | | **Disputed** | | | $147,160.00 |

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

| Debtor | **Durr Mechanical Construction, Inc.** | Case number *(if known)* | |
|---|---|---|---|
| | Name | | |

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| **Travelers CL Remittance Center PO Box 660317 Dallas, TX 75266-0317** | | | **Disputed** | | | **$2,500,000.00** |
| **United Rentals, Inc. P.O. Box 100711 Atlanta, GA 30384-0711** | | | **Disputed** | | | **$1,911,587.16** |
| **Von Rohr Equipment Corp. P.O. Box 347 Bloomfield, NJ 07003** | | | | | | **$143,074.21** |

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

## Schedule 2

### 5 Largest Secured Claims

| Creditor | Amount of Claim | Description of Claim | Value of Collateral Securing Claim | Lien or Claim Disputed (Y/N) |
|---|---|---|---|---|
| HSBC Bank USA, National Association 80 Eighth Ave. New York, NY 10011 | $5,000,000 | Revolving line of credit | Debtor's assets | Unknown |
| Valley National Bank Wayne Valley II 1400 Valley Road Wayne, NJ 07470 | $5,000,000 | Revolving line of credit | Debtor's assets | Unknown |
| Crestmark Equipment Finance, Inc. 40950 Woodward Ave. Suite 201 Bloomfield Hills, MI 48304 | $443,231 | Finance agreement | Certain equipment | No |
| Marlin Business Bank 2795 E. Cottonwood Pkwy Salt Lake City, Utah 84121 | $63,621 | Finance agreement | Certain equipment | No |
| Internal Revenue Service (IRS) Centralized Insolvency Operation P.O. Box 7346 Philadelphia, PA 191101-7346 | $15,000,000 | Unpaid taxes | Debtor's assets | Unknown |

**<u>Schedule 3</u>**

**Summary of Debtor's Assets and Liabilities**

Pursuant to Local Bankruptcy Rule 1007-2(a)(6), the following unaudited financial information is the latest available information and reflects the Debtor's financial condition as of November 8, 2018.

<u>Total Assets</u>:          $127,000,000

<u>Total Liabilities</u>:     $52,750,677

**Schedule 4**

**Premises Owned or Leased**

| Address of Property | Owned or Leased |
|---|---|
| 80 8th Avenue, New York, New York | Leased |
| 608 Main Street, Westbury, New York | Leased |
| 2395 Route #715, Tannersville, Pennsylvania | Leased |

**Schedule 5**

**Location of Debtor's Significant Assets, Books
and Records and Assets Outside of U.S.**

| Asset | Location | Value (if Outside U.S.) |
|---|---|---|
| Books and Records | 80 8th Avenue New York, NY 10011 | N/A |
| Contract Receivables | Various New York, New Jersey, Pennsylvania and Connecticut project locations | N/A |
| Equipment and Inventory | Leased premises at Westbury, NY and Tannersville, PA. | N/A |

## Schedule 6

| Action | Court and Case No | Status of Action |
|---|---|---|
| Bay Crane Service of NJ v. Durr Mechanical Construction, Inc., Fidelity and Deposit Company of Maryland and Zurich Amer. Insur. Comp. | New Jersey Middlesex Civil Part, Case No. MID-L-003228-18 | Pending |
| Creamer-Sanzari Joint Venture v. Durr Mechanical Construction, Inc. | New Jersey District Court, Case No. 18-cv-12464 | Pending |
| The Woodward Co. v. Durr Mechanical Construction, Inc. and/or Megrant Corp.; individually and doing business as Durr-Megrant a JV | Supreme Court of New York, Albany County, Index No. 04319-18 | Pending |
| Mammoet USA North Inc. v. Durr Mechanical Construction, Inc., Megrant Corp. and Durr-Megrant A JV | Supreme Court of New York, New York County, Index No. 653014/2018 | Pending |
| Thomas P. Stewart Consulting, Inc. v. Durr Mechanical Construction, Inc. | Supreme Court of New York, Orange County, Index No. 004290-2018 | Pending |
| Brand Energy Services, LLC a/k/a Brand Energy Services v. Durr Mechanical Construction, Inc., Fidelity and Deposit Company of Maryland and Zurich American Insurance Company | New Jersey Middlesex Civil Part, Case No. MID-L-5046/18 | Pending |
| Brandsafway Services, LLC f/k/a Safeway Services, LLC v. Durr Mechanical Construction, Inc., Durr-Megrant a Joint Venture a/k/a Durr-Megrant a JV, Megrant Corp., Fidelity and Deposit Company of Maryland and Zurich American Insurance Company | New Jersey Middlesex Civil Part, Case No. MID-L-5034/18 | Pending |

| | | |
|---|---|---|
| New States Contracting & Advanced Specialty Contractors v. Durr Mechanical Construction, Inc. | District Court of the Southern District of New York, Case No. 18-cv-3092 | Pending |
| Maxim Crane Works, L.P., a successor to Amquip Crane Rental, LLC v. Durr Mechanical Construction, Inc. | District Court of the Southern District of New York, Case No. 18-cv-00020 | Pending |
| Sofrock International Inc. v. Durr Mechanical Construction, Inc. Federal Insurance Company | Supreme Court of New York, Orange County, Index No. 652811/2015 | Pending |
| Boilermaker-Blacksmith v. Durr Mechanical Construction | 18-cv-02268-JAR-TJJ | Pending |
| Mayer Malbin Co., Inc. v. Durr Mechanical Construction, Inc. d/b/a Durr Mechanical | Civil Court of New York, Queens County | Pending |
| IK Construction Company, Inc. v. Durr Mechanical Construction, Inc., Port Authority of New York and New Jersey, Covanta Essex Company, Covanta Energy Company, Fidelity and Deposit Company of Maryland, Zurich North America, Corporations A, B, C, and D whose identity and responsibility for the claims made in this Complaint are not yet known, and Corporations E and F whose identity are not known and who may be other lien claimants | New Jersey Superior Court, Essex County, Case No. L-1490 | Pending |
| Supor Trucking, LLC d/b/a J. Supor & Son Trucking & Rigging Co. Inc. v. Durr Mechanical Construction, Inc. | Supreme Court of New York, New York County, Index No. 157631/2018 | Pending |
| Keegan Technology and Testing, Associates v. Durr Mechanical Construction, Inc. | New Jersey Superior Court, Monmouth County, Case No. L-003903-18 | Pending |

| | | |
|---|---|---|
| Advanced Scaffold Services LLC v. Durr Mechanical Construction | NJ Superior Court - Passaic County, Case No. PAS-DC-012679-18 | Pending |

**Schedule 7**

**Senior Management**

| Name | Title | Tenure | Experience/Responsibilities |
|---|---|---|---|
| Kenneth A. Durr | President and Treasurer | 5/1/1986-Present | Mr. Durr oversees all of the Debtor's departments and leads its strategy for company development and financial growth. His responsibilities include: reviewing job costs, final project estimates and sales leads, as well as negotiating contracts; Mr. Durr will be the principal witness and render services for and relating to the prosecution of each of the Affirmative Claims. |
| Robert J. Durr, Jr. | Vice President and Secretary | 7/6/1987-Present | Mr. Durr oversees Debtor's estimating and procurement department, as well as shop operations.  He is now involved with labor relations and the overview of major power, process and specialty projects. He also oversees Debtor's QA/QC program- including monitoring and maintenance of all welders, procedures and NBIC "R" and "NB" and ASME "S" and "U" code stamps.  He also guides the company's employee development and training strategy.  Mr. Durr will also be a main witness and render services for and relating to the prosecution of each of the Affirmative Claims. |
| Frank Heidinger | Vice President And Assistant Secretary | 10/20/1986-Present | Mr. Heidinger's responsibilities encompass all facets of construction management including strategic planning, contract administration, cost control and assuring that project managers perform in accordance with company methods and goals.   Additionally, Mr. Heidinger is responsible for the development and maintenance of safety and training programs, administration of record, incident investigation and the enforcement of policies and corrective action. Mr. Heidinger will also be a main witness and render services for and relating to the prosecution of each of the Affirmative Claims. |
| Paul Thompson | Vice President | 11/24/2000-Present | Mr. Thompson is directly involved with decisions regarding the daily operations of the Debtor, as well as long term strategy for business development.  He oversees construction project management, contract administration, cost control, project planning and implementation.  Mr. Thompson is also involved with the development and maintenance of Debtor's safety and training program, while leading the technology equipment. Mr. Thompson will be a main witness and render services relating to the prosecution of the Affirmative Claim against PSE&G. |
| John Risley | Vice President | 6/9/2014 | Mr. Risley is directly involved with decisions regarding the daily operations of the Debtor, as well as long term strategy of business development.  He oversees the marketing department for Debtor and the execution of projects he helps develops. Mr. Risley is a main witness to the prosecution of the Affirmative Claim against Enexio. |

## Schedule 8

### Estimated Weekly Payroll (Non-Management)

Pursuant to Local Rule 1007-2(b)(1), the estimated amount of gross payroll to employees (exclusive of officers, directors, stockholders and partners) for the thirty (30) day period following the Petition Date is approximately $156,850.00, not including fringe benefits.

## **Schedule 9**

### **Estimated Payroll (Management)**

Pursuant to Local Rule 1007-2(b)(2), the estimated amount of gross payroll to the Debtor's officers, directors, stockholders and partners for the thirty (30) day period following the Petition Date is approximately $37,774.80.

## Schedule 10

**Cash Receipts and Disbursements, Net Cash
Gain or Loss, Unpaid Obligations and Receivables**

Pursuant to Local Bankruptcy Rule 1007-2(b)(3), the following provides the estimated aggregated cash receipts and disbursements, net cash gain or loss, and obligations and receivables expected to accrue that remain unpaid (other than professional fees) for the 30-day period following the Petition Date.

| | |
|---|---|
| **Cash Receipts** | $1,118,682 |
| **Cash Disbursements** | $891,787 |
| **Net Cash Gain (Loss)** | $226,985** |

** Subject to change based upon any settlement funds or litigation awards received in connection with the Affirmative Claims.

m:\documents\company\cases\durr mechanical construction, inc\first day motion drafts\1007 declaration\durr first day declarationv5.doc